**Ferne B. KATZ, Plaintiff,**

v.

**ALLTEL CORPORATION; Comprehensive Plan of Group Insurance; ALLTEL Pension and Benefits Committee; and Connecticut General Life Ins. Co ., Defendants.**

**No. CIV.A.1:96–CV–1675–TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 17, 1997.

---

Everett Warner Gee, Womble Carlyle Sandridge & Rice, Atlanta, GA, for ALLTEL Corp., ALLTEL Pension, Comprehensive Plan.

Brian J. Morrissey, Richelo Lorrissey & Gould, Atlanta, GA, for Connecticut Gen. Ins.

Robert Neil Dokson, Ellis Funk Goldberg Labovitz & Dokson, Atlanta, GA, for Ferne B. Katz.

## ORDER

THRASH, District Judge.

This matter is before the court on the (1) Motion for Partial Summary Judgment filed by Defendants ALLTEL Corporation ("ALLTEL"), the Comprehensive Plan of Group Insurance ("Plan"), and ALLTEL Pension and Benefits Committee ("Committee") (collectively referred to herein as the "ALLTEL Defendants") [Doc. No. 28]; and the (2) Plaintiff's Motion for Leave to File Brief in Excess of 25 pages [Doc. No. 39].

### I. BACKGROUND

Plaintiff is the widow of Barry Katz who died on August 9, 1995. Mr. Katz had been an employee of TDS Health Care Systems Corporation ("TDS") or its predecessors since 1967. Defendant ALLTEL acquired TDS in October, 1993. From October, 1993, until the end of 1994, TDS had an independent employees benefit plan that was qualified under the Employment Retirement Income Security Act ("ERISA"). Massachusetts Mutual served as the group life insurance carrier for the TDS benefits plan. On January 1, 1995, TDS was combined with other ALLTEL entities to form ALLTEL Healthcare Information Services. The former TDS employees became participants in the ALLTEL benefits program. Upon the death of Mr. Katz, Defendant Connecticut General Life Insurance Company ("CIGNA") paid life insurance benefits to Plaintiff (as Mr. Katz' beneficiary) based upon the life insurance benefits due under the old TDS plan. Plaintiff claims that she is entitled to the life insurance benefits due under the new ALLTEL benefits plan.

Mr. Katz rose to the level of Senior Vice-President at TDS. In the fall of 1994, ALLTEL decided to eliminate his position as part of the TDS consolidation. His position was to be eliminated after January 1, 1995. In late 1994, Mr. Katz became ill and went on short-term disability leave until May 13, 1995. In addition, he applied for long-term disability in the fall of 1994. In his long-term disability application, Mr. Katz stated that he was first unable to work on November 3, 1994. He began receiving long-term disability benefits on May 13, 1995. Early in 1995, ALLTEL and Mr. Katz were negotiating the terms of his severance package.

While Mr. Katz was on short term disability leave in late 1994, he enrolled in the ALLTEL employee benefits plan. He signed the enrollment forms while he was in the hospital. The Plan was sponsored by the Defendant Committee and included a life insurance program which was to take effect with all TDS employees on January 1, 1995. CIGNA was the group life insurance carrier. Under the ALLTEL–CIGNA life insurance program, Mr. Katz was entitled to life insurance providing death benefits in the amount of $620,000. Under the former TDS program, Mr. Katz was only entitled to $418,000 in life insurance benefits..

From January 1, 1995, through May 13, 1995, ALLTEL deducted from each of Mr. Katz' disability paychecks the employee-paid portion of the life insurance premiums owed for coverage under the Plan. The deductions were based upon coverage in the amount of $620,000. On February 3, 1995, Mr. Katz sent James Hillis, ALLTEL's Vice–President of Human Resources Development, a letter to confirm the continuance of $310,000 basic life and $310,000 supplemental life insurance benefits during his period of disability. By letter dated April 7, 1995, Mr. Hillis responded by confirming the continuation of life insurance benefits throughout the disability period. He said nothing about the amount of coverage. This correspondence was part of the ongoing negotiations concerning the severance pay and benefits package that Mr. Katz was to receive upon his termination of employment.

In May of 1995, Mr. Hillis sent Mr. Katz a proposed General Release which set forth the

terms of a final settlement of his claims arising out of his employment contracts with TDS. The General Release provided for a total cash payout to Mr. Katz in the amount of $262,500. In consideration for this payout, the General Agreement provided that Mr. Katz "irrevocably and unconditionally releases, acquits, and forever, discharges ALLTEL from any and all charges, complaints, claims, liabilities, obligations, promises or any other cause of action of any nature whatsoever, known or unknown." Finally, it provided that it was binding upon and inures to the benefit of "Katz, his heirs, representatives, executors, and successors and assigns, and shall inure to the benefit of ALLTEL." Mr. Katz sent the General Release back to Mr. Hillis with certain handwritten changes that he initialed. The handwritten changes, in effect, provided that Mr. Katz would continue to have the ALLTEL group life insurance benefits after his termination. Mr. Hillis did not initial or otherwise express his assent to the handwritten changes in the agreement. However, ALLTEL, in May of 1995, paid to Mr. Katz the sum of $262,500, the lump sum severance pay set forth in the agreement.

Barry Katz died on August 9, 1995, from a long-term illness. Subsequently, CIGNA paid the Plaintiff $418,000. In a letter dated December 7, 1995, CIGNA notified Plaintiff's counsel that it was denying the claim for $620.000 in life insurance under the Plan because Barry Katz had not been in active service on January 1, 1995, the effective date of the Plan for TDS employees, and had never returned to active service prior to his death. The Plaintiff subsequently filed this action against the ALLTEL Defendants and CIGNA. Under Count I of her amended complaint, the Plaintiff alleges that Mr. Katz was in active service as of January 1, 1995, and was otherwise covered by the Plan. Pursuant to 29 U.S.C. § 1132(a)(1)(B), she seeks recovery in Count I of $202,000, the difference between the $620,000 she claims and the $418,000 already paid to her. Under Count II, the Plaintiff seeks recovery in the form of restitution and other equitable relief based on ALLTEL's breach of fiduciary duties under 29 U.S.C. § 1132(a)(3). Under Count III, the Plaintiff asserts that ALLTEL and CIGNA are equitably estopped from denying her claim for $620,000, the full benefit due under the CIGNA policy. Finally, under Count IV, the Plaintiff asserts that the actions of the Defendants constitute waiver. The Plaintiff seeks damages in the amount of $202,000 under both Counts III and IV.

The ALLTEL Defendants filed a motion for partial summary judgment with respect to Counts II, III, and IV. They contend that ERISA affords no remedy to the Plaintiff under these counts because the Plaintiff essentially seeks monetary damages and not appropriate equitable relief. The ALLTEL Defendants further contend that the Plaintiff cannot establish breach of fiduciary duty, equitable estoppel, or waiver as a matter of law. While acknowledging that the General Release does not preclude the Plaintiff from asserting Count I, they contend that the General Release bars Counts II, III, and IV. In response, the Plaintiff maintains that ERISA permits equitable relief that orders payment of past due benefits as restitution. She further contends, *inter alia*, that genuine issues of material fact exist as to whether the General Release is enforceable because no meeting of the minds occurred and if such meeting occurred, it was based on mutual mistake. With regard to her response brief, the Plaintiff moves to file a brief that exceeds the 25–page limitation under Local Rule 7.1. The Court recognizes that the issues presented in this case are complex and necessitate briefs that exceed the page limitations. Accordingly, this motion [Doc. No. 39] is granted.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only when the pleadings, depositions and affidavits submitted by the parties show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The evidence and any inferences that may be drawn should be viewed in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987). The party seeking summary judgment must

first identify grounds that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Mere denials or allegations by the nonmovant in the form of legal conclusions and unsupported by any specific facts have no probative value and are therefore insufficient to create issues of material fact that would preclude summary judgment. *Broadway v. City of Montgomery*, 530 F.2d 657, 660 (5th Cir.1976).

### III. DISCUSSION

The Court will first consider whether the Plaintiff has a cause of action in ERISA under Counts II, III, or IV. In adopting ERISA, Congress sought to protect participants in employee benefit plans and their beneficiaries by requiring disclosure and reporting to those participants and beneficiaries of financial and other information, establishing standards of conduct, responsibility, and obligation for fiduciaries of those plans, and providing for appropriate remedies, sanctions, and ready access to the federal courts. 29 U.S.C. § 1001(b). The Supreme Court in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), held that the civil enforcement provisions of ERISA, § 502(a) (codified at 29 U.S.C. § 1132(a)), constitute the exclusive vehicle for actions by ERISA plan participants and beneficiaries asserting improper processing of claims for benefits. *Id.* at 52–56, 107 S.Ct. at 1555–58. The Supreme Court further stated that Congress intended the federal courts to develop a common law of rights and obligations for ERISA regulated plans. *Id.* at 56, 107 S.Ct. at 1557–58.

Section 502(a) provides an ERISA plan participant and beneficiary with several civil enforcement provisions. Section 502(a)(3) provides that a civil action may be brought:

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

11 U.S.C. § 1132(a)(3). The Supreme Court in *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), addressed the meaning of the phrase "appropriate equitable relief" in § 502(a)(3). In *Mertens,* the issue was whether ERISA authorized suits for money damages against nonfiduciaries who knowingly participated in a fiduciary's breach of duty. *Id.* at 251, 113 S.Ct. at 2065. In seeking relief under § 502(a)(3), the petitioners argued that requiring the respondent to make the plan whole for the losses resulting from respondent's alleged knowing participation in a breach of fiduciary duty would constitute "other appropriate equitable relief" within the meaning of ERISA. *Id.* at 255, 113 S.Ct. at 2068. The Supreme Court concluded, however, that the term only referred to traditional forms of equitable relief consisting of injunction, mandamus, and restitution. *Id.* at 255–260, 113 S.Ct. at 2068–70. Thus, "appropriate equitable relief" did not encompass compensatory damages. *Id.* at 255, 113 S.Ct. at 2068. In determining that the petitioners were seeking compensatory damages, the Supreme Court looked to the substance of the remedy sought rather than the label placed on that remedy. *Id.* at 255, 113 S.Ct. at 2068.

Recently, in *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court clarified the circumstances in which an individual may sue for breach of fiduciary duty under § 502(a)(3). In that case, the individuals brought an ERISA action against their former employer who had induced them to join the plan of a subsidiary by misrepresenting to the employees that they would receive the same benefits from the subsidiary. *Id.* at 491–93, 116 S.Ct. at 1068–69. The Supreme Court held that the individuals were entitled to injunctive relief under § 502(a)(3) and reinstated them to the former employer's plan.

*Id.* at 506–14, 116 S.Ct. at 1075–79. The Supreme Court emphasized, however, that § 502(a)(3) is a "catchall" provision that provides relief only for injuries that are not otherwise adequately provided for by ERISA. *Id.* at 512, 116 S.Ct. at 1078. "[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief would not be 'appropriate.'" *Id.* at 514, 116 S.Ct. at 1079.

■ With these legal principles in mind, this Court will now consider whether the Plaintiff can bring her actions for breach of fiduciary duty, equitable estoppel, and waiver. In Count II, the Plaintiff seeks monetary recovery in the form of restitution and other equitable relief based on ALLTEL's breach of fiduciary duties under § 502(a)(3). The Plaintiff contends that the payment of past due benefits under the Plan constitutes restitution and "appropriate equitable relief" under § 502(a)(3). However, in Count I, the Plaintiff brought a claim for benefits under § 502(a)(1)(B), seeking recovery in the amount of $202,000 which is the difference between the $620,000 claimed by her and the $418,000 already paid to her. The Court concludes, therefore, that equitable relief under Count II is not appropriate because (1) the Plaintiff is provided adequate relief by her right to bring a claim for benefits under § 502(a)(1)(B), and (2) she seeks no substantively different relief in Count II. *See Wald v. Southwestern Bell Corp. Customcare Medical Plan,* 83 F.3d 1002, 1006 (8th Cir.1996). In contrast to the present case, the individuals in *Varity Corp.* did not seek relief under any other civil enforcement provision in § 502(a). Accordingly, the Plaintiff's claims in Count II cannot state a valid claim for equitable relief pursuant to § 502(a)(3).

■ In Count III, the Plaintiff asserts that the ALLTEL Defendants and CIGNA are equitably estopped from denying her entire claim for benefits. She seeks monetary damages in the amount of $202,000. Before *Mertens,* the Eleventh Circuit recognized that the federal common law of equitable estoppel applies when the employee relies to his detriment on an interpretation of an am-

biguous provision in a plan by a representative of that plan. *Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1285–86 (11th Cir.), *cert. denied,* 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). The Eleventh Circuit set forth the following elements of equitable estoppel, as defined by federal common law: (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentations. *National Companies Health Ben. Plan. v. St. Joseph's Hosp.,* 929 F.2d 1558, 1572 (11th Cir.1991).

The Supreme Court in *Mertens* stated that the authority of courts to develop ERISA federal common law is not the authority to revise the text of the statute. *Mertens,* 508 U.S. at 259, 113 S.Ct. at 2070. Rather, *Mertens* requires the plaintiff to identify one of the enforcement provisions in § 502(a) that authorizes the recovery of damages on their ERISA claim. *Id.* at 251–56, 113 S.Ct. at 2066–68. The Eleventh Circuit has not considered the effect of *Mertens* on federal claims of equitable estoppel in an ERISA action. However, the Ninth Circuit in *Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517 (9th Cir.1993), analyzed *Mertens* and held that the petitioners were required to identify one of the civil enforcement provisions that authorize the recovery of damages on their federal estoppel claim. *Id.* at 1527–28. In light of *Mertens,* that court concluded that § 502(a)(3) did not provide statutory authority for the equitable estoppel claim because the petitioners were seeking compensatory damages. *Id.* The Ninth Circuit rejected the federal estoppel claim because the petitioners failed to identify any statutory authority for the recovery of damages on such a claim. *Id.*

Here, the Plaintiff has not identified any of the provisions in § 502(a) as authority for the recovery of monetary damages on her equitable estoppel claim. In some cases decided

after *Mertens,* courts have held that § 502(a)(3) provides statutory authority for equitable estoppel claims. *See Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226 (3rd Cir.1994); *Chitkin v. Lincoln Nat. Ins. Co.,* 879 F.Supp. 841, 852 (S.D.Cal.1995). However, even assuming that the Plaintiff identified § 502(a)(3) as the statutory authority for her claim, *Mertens* bars the Plaintiff's equitable estoppel action because she is seeking monetary damages on this claim. Because monetary damages do not constitute "appropriate equitable relief" under § 502(a)(3) and the Plaintiff has failed otherwise to identify any other statutory authority, the Plaintiff's equitable estoppel claim in Count III is impermissible under ERISA. While the Plaintiff may not assert equitable estoppel as a separate claim, this does not prohibit her from asserting principles of equitable estoppel as a theory for recovery of benefits in Count I. *See Kane,* 893 F.2d at 1285–86.

Finally, in Count IV, the Plaintiff asserts that the actions of the Defendants constitute waiver, and she seeks damages in the amount of $202,000. The Court can discern no material difference between her waiver and equitable estoppel claim, and the Plaintiff has made no arguments advancing her waiver claim. As with her equitable estoppel claim, the Plaintiff has identified no statutory authority under § 502(a) to authorize the recovery of damages on this waiver claim. Accordingly, her waiver claim is impermissible under ERISA.

### IV. SUMMARY

In summary, the Plaintiff's Motion for Leave to File Brief in Excess of 25 Pages [Doc. No. 39] is GRANTED. Because the Plaintiff does not have a cause of action for her breach of fiduciary duty, equitable estoppel, and waiver claims, the ALLTEL Defendants' Motion for Partial Summary Judgment [Doc. No. 28] is GRANTED. Counts II, III, and IV are dismissed from this action. Consequently, it is unnecessary for the Court to determine whether the General Release bars these Counts against the ALLTEL Defendants. This case will be placed on the February, 1998, trial calendar and the *Consolidated* Pretrial Order will be due no later than January 30, 1998.