[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 18, 2004
THOMAS K. KAHN
CLERK

No. 03-14123

D. C. Docket No. 01-00003 CV-1-WTM

GERALD W. JONES,
JOHN H. ASKEW, JR., et al.,

                                                            Plaintiffs-Appellants,

versus

AMERICAN GENERAL LIFE AND ACCIDENT
INSURANCE COMPANY,

                                                            Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Georgia

**(May 18, 2004)**

Before DUBINA and COX, Circuit Judges, and OWENS*, District Judge.

DUBINA, Circuit Judge:

_____
*Honorable Wilbur D. Owens, Jr., United States District Judge for the Middle District of
Georgia sitting by designation.

In this ERISA case, Appellants Gerald W. Jones, John H. Askew, Jr., Lloyd E. Maddox, and Anna H. White, representing themselves and over 1,400 similarly-situated class members (collectively the "Appellants"), appeal the district court's orders granting summary judgment in favor of Defendant-Appellee American General Life and Accident Insurance Company ("American General") on their ERISA Section 502(a)(1)(B) breach of contract and equitable estoppel claims, and dismissing their Section 502(a)(3) breach of fiduciary duty claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After reviewing the record, and having the benefit of oral argument, we conclude that the district court properly dismissed the Appellants' Section 502(a)(1)(B) claims, but erred in finding that *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084 (11th Cir. 1999), precluded the Appellants' Section 502(a)(3) claim. Accordingly, we affirm in part, reverse in part, and remand for further proceedings on the Appellants' Section 502(a)(3) claim.

## I. BACKGROUND

The Appellants are a group of individuals formerly employed by Independent Life and Accident Insurance Company ("Independent Life"), an insurance company that operated primarily in the southeastern United States prior to merging with American General. Beginning in the 1960s, Independent Life

2

provided its employees with a generous group life insurance benefit–employees that stayed with Independent Life until retirement would retain their group life insurance coverage after retirement at company expense.

Independent Life provided this benefit through an ERISA-governed welfare benefit plan (the "Plan"). While Independent Life revised the Plan from time to time over the years, the Plan consistently contained language stating that "If you retire directly from active employment from the Company . . . you get to keep all or some of your Group insurance. . . ." Additionally, at least one summary plan description ("SPD") stated that employees hired before May 31, 1976, "will continue to be covered after they reach age 65 or retire for the full amount of insurance in effect immediately before retirement."

At the same time, however, the "**<u>TERMINATION OF INSURANCE</u>**" section of the Plan always stated that coverage "[would] automatically terminate on . . . [the] date of termination of this policy. . . ." The SPDs consistently contained near identical "termination of insurance" language. In addition, the 1992 incarnation of the Plan contained a more explicit "reservation of rights" provision, which stated:

> Although the Company has established this Group Insurance Plan
> with the intention of continuing it indefinitely, the uncertainty under
> which all businesses operate, as well as possible future changes in the

law, make it necessary for the Company to reserve the right to amend or terminate the Plan at any time.

The Appellants contend that Independent Life used the promise of free lifetime group coverage as a tool for recruiting and retaining agents and other employees. During discovery, the Appellants offered a substantial body of evidence, consisting primarily of letters written to plan participants and deposition testimony of former Independent Life management, which they allege demonstrates that Independent Life represented to current and prospective employees that the post-retirement group life benefit would never be terminated.

Additionally, while the Appellants concede that Independent Life periodically reduced the group life benefit, they contend that Independent Life would only make these changes prospectively. In 1989, Independent Life amended the plan to cut the amount of retiree insurance coverage, but only for employees retiring after December 31, 1988. In 1992, Independent Life terminated the retiree insurance coverage altogether, but only for employees hired after January 1, 1993. Under the 1992 plan, pre-1992 retirees retained the amount of insurance in effect for them in 1992.

The Appellants further contend that, after Independent Life merged with American General, American General continued to represent to employees that the

retiree group life benefit would never be eliminated. To demonstrate this, they offered letters that American General mailed to at least 197 retirees in which American General confirmed the amount of each retiree's group life benefit and stated, "This amount will remain in effect for your lifetime. No premiums are required for continued coverage under the plan." The Appellants contend that they planned for their retirement in reliance on this promise of lifetime group coverage–they purchased little additional life insurance and selected "life only" pension disbursements that would pay their spouses nothing upon their deaths.

By letter dated September 30, 2000, American General informed the Appellants that it was terminating the retiree group life benefit effective January 1, 2001. The letter explained that retirees had the option to convert to individual coverage by paying premiums established by their attained age. As the Appellants were beyond retirement age, attained age conversion to permanent insurance was cost prohibitive and, thus, not a viable option for most of the Appellants.

Following receipt of this letter, Appellant Gerald Jones contested the discontinuation of his life insurance benefits through the claim procedure provided under the Plan. When his claim was denied, Jones filed this class action in a Georgia superior court in December 2000, seeking to enjoin cancellation of the policy and to recover the cost of purchasing permanent, lifetime coverage in the

amount offered by American General. American General removed the case on the basis of ERISA preemption, and the district court then dismissed Jones's state law claims and struck Jones's request for a jury trial.

In March 2002, Jones filed an amended complaint, in which Jones and three additional named plaintiffs sought relief under ERISA theories of breach of contract, equitable estoppel, and breach of fiduciary duty. American General moved to dismiss, arguing, with respect to the Appellants' breach of fiduciary duty claim, that this claim was only cognizable under the ERISA's "catchall" provision, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and that, pursuant to *Katz*, the Appellants were not entitled to Section 502(a)(3) relief because Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), afforded them an adequate remedy. The district court agreed, and in July 2002, dismissed the Appellants' breach of fiduciary duty claim on the basis of *Katz*.

In July 2003, the district court granted American General's motion for summary judgment and dismissed both of the Appellants' remaining claims. With respect to the Appellants' breach of contract claim, the district court concluded that the Appellants had no vested right to the retiree group life benefit, and thus, that American General was free to terminate this benefit at any time. With respect to the promissory estoppel claim, the district court concluded that the Appellants

6

could not make out a prima facie case because they failed to demonstrate that the relevant provisions of the plan were ambiguous, or that any of the Appellants received an oral interpretation of any ambiguity. This appeal followed.

## II. ISSUES

1. Whether the district court erred in granting summary judgment in favor of American General on the Appellants' Section 502(a)(1)(B) breach of contract and equitable estoppel claims.

2. Whether the district court erred in dismissing the Appellants' Section 502(a)(3) breach of fiduciary duty claim under Rule 12(b)(6), finding that Section 502(a)(1)(B) afforded the Appellants with an adequate remedy.

## III. STANDARD OF REVIEW

We review a district court's order granting summary judgment *de novo*, viewing the facts in the record in the light most favorable to the non-moving party, and drawing all inferences in that party's favor.[1] *Branche v. Airtran Airways, Inc.*,

---

[1]American General represents to this court, without citation, that the district court made "findings of fact" in its summary judgment order that can be reviewed only for clear error. However, it is well settled that "a district court does not make factual findings in deciding a summary judgment motion, so no question of clear error review . . . arises here." *Wooden v. Board of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1271 n.9 (11th Cir. 2001). "[B]ecause summary judgment may only be granted where there is no genuine issue of material fact, any purported 'factual findings' of the [trial] court cannot be 'factual findings' as to disputed issues of fact, but rather are conclusions as a matter of law that no genuine issue of material fact exists." *Rosen v. Bezner*, 996 F.2d 1527, 1530 n.2 (3d Cir. 1993).

342 F.3d 1248, 1252 (11th Cir. 2003), *cert. denied*, 124 S. Ct. 1422 (2004). This court also reviews *de novo* the district court's dismissal of a claim pursuant to Rule 12(b)(6). *Vega v. McKay*, 351 F.3d 1334, 1336 (11th Cir. 2003). "A dismissal for failure to state a claim is erroneous unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cryder v. Oxendine*, 24 F.3d 175, 176 (11th Cir. 1994) (internal quotations omitted).

## IV. DISCUSSION

*Whether the district court erred in dismissing the Appellants' Section 502(a)(1)(B) claims.*

Section 502(a)(1)(B) empowers ERISA participants and beneficiaries to bring a civil action in order to recover benefits, enforce rights to benefits, or clarify rights to future benefits due under the terms of an ERISA-governed welfare benefit plan. 29 U.S.C. § 1132(a)(1)(B); *Land v. CIGNA Healthcare of Fla.*, 339 F.3d 1286, 1290 (11th Cir. 2003). In addition to the remedies explicitly authorized in Section 502(a)(1)(B), which are akin to common law breach of contract causes of action, this court has recognized a very narrow common law doctrine under Section 502(a)(1)(B) for equitable estoppel, which is available where the plaintiff can show that (1) the relevant provisions of the plan at issue are

8

ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of the ambiguity. *See Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285-86 (11th Cir. 1990) (recognizing the availability of equitable estoppel where the plan administrator made representations constituting oral interpretations of an ambiguous plan); *see also National Cos. Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, Inc.*, 929 F.2d 1558, 1572 (11th Cir. 1991), *abrogated in part on other grounds by Geissal v. Moore Med. Corp.*, 524 U.S. 74, 86-87, 118 S. Ct. 1869, 1876, 141 L. Ed. 2d 64 (1998) (recognizing that "[t]he rationale of *Kane* is equally applicable to informal written interpretations of an ERISA plan").

Because we apply the doctrine of *contra proferentem* to resolve ambiguities in ERISA-governed plans, *Lee v. Blue Cross/Blue Shield of Ala.*, 10 F.3d 1547, 1551 (11th Cir. 1994), an ERISA plaintiff is generally not required to demonstrate his entitlement to benefits in clear and express language in the relevant provisions of his plan in order to make out a Section 502(a)(1)(B) "breach of contract" claim. However, whether proceeding on a breach of contract or equitable estoppel theory, an ERISA plaintiff can only succeed on a Section 502(a)(1)(B) claim if he can establish that the plan at issue is at least ambiguous with respect to the relevant benefits for which he claims entitlement.

9

The Appellants urge us to conclude that the Plan is ambiguous with respect to whether their group life benefit has vested. In support of their argument, the Appellants rely exclusively on a handful of statements in the relevant documents, providing that: "If you retire directly from active employment from the Company . . . you get to keep all or some of your Group Insurance . . . ," and that employees hired before May 31, 1976 "will continue to be covered after they reach age 65 or retire for the full amount of insurance in effect immediately before retirement."

While the Appellants contend that the words "keep" and "continue" in these provisions require us to hold in their favor, other courts of appeals have consistently rejected the notion that welfare benefits may vest simply because they continue into retirement, particularly when other plan provisions establish that benefits are generally terminable. *See, e.g.*, *Sprague v. General Motors Corp.*, 133 F.3d 388, 401 (6th Cir. 1998); *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 58 F.3d 896, 903-04 (3d Cir. 1995) ("An employer who promises lifetime medical benefits, while at the same time reserving the right to amend the plan under which those benefits were provided, has informed plan participants of the time period during which they will be eligible to receive benefits *provided* the plan continues to exist."); *Howe v. Varity Corp.*, 896 F.2d 1107, 1110 (8th Cir. 1990); *Musto v. American Gen. Corp.*, 861 F.2d 897, 906 (6th Cir. 1988) ("To read this

10

summary as saying that the plan can never be changed in such a way as to mandate

retiree contributions for continued medical coverage is to read into the summary

something its authors did not put there (a promise to provide lifetime 'paid up'

medical insurance), while reading out of the summary something that clearly was

put there (an express reservation of right to change the plan).").  Instead, these

courts have reasoned that such provisions merely describe the period of time

participants may be eligible to receive non-vested benefits.  As the Eighth Circuit

explained in *Howe*:

> [T]he mere fact that employee welfare benefits continue in
> retirement does not indicate that the benefits become vested for
> life at the moment of retirement. No inference of an intent to vest
> can be presumed from the fact the benefits are retirement benefits.
> Indeed, the benefits at issue here are "retirement benefits" in a
> technical sense only. Unlike pension benefits, coverage under the
> welfare benefit plan does not begin at an employee's retirement.
> Rather, . . . the welfare benefits simply continue when an
> employee retires. Nothing in the documents establishes retirement
> as a vesting point.

*Howe*, 896 F.2d at 1110 (internal citations omitted).

We agree with the overwhelming weight of authority from our sister circuits

and conclude that the language upon which the Appellants rely merely describes

the period of time during which the Appellants were eligible to receive the group

life benefit, so long as the Plan continued to exist.  *See Unisys*, 58 F.3d at 903-04.

11

This language is not inconsistent with the reserved right to unilaterally modify the benefits that American General provided through the Plan, and, as such, it cannot render the Plan ambiguous.

Because the Plan is unambiguous and precludes vesting of the retiree group life benefit, the district court did not err in granting summary judgment in favor of American General on the Appellants' breach of contract claim. Additionally, because the Plan is unambiguous, the Appellants cannot make out a prima facie case of equitable estoppel. *See Kane*, 893 F.2d at 1285-86. Accordingly, summary judgment was appropriate on both of these claims.

*Whether the district court erred in dismissing the Appellants' Section 502(a)(3) breach of fiduciary duty claim.*

One of the principal purposes of ERISA is "to protect . . . the interests of participants . . . and . . . beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries . . . and . . . providing for appropriate remedies . . . and ready access to the Federal courts." ERISA § 2(b), 29 U.S.C. § 1001(b), *quoted in Varity Corp. v. Howe*, 516 U.S. 489, 513, 116 S. Ct. 1065, 1078, 134 L. Ed. 2d 130 (1996). In furtherance of this general objective, ERISA Section 404(a) obligates fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries." ERISA § 404(a), 29 U.S.C. § 1104(a). This

12

court has recognized that "[t]he responsibility attaching to fiduciary status has been described as 'the highest known to law.'" *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003) (quoting *Herman v. Nationsbank Trust Co. (Ga.)*, 126 F.3d 1354, 1361 (11th Cir. 1997)).

While Congress did not provide a remedy for breaches of Section 404(a) fiduciary obligations in the specific remedial provisions found in Sections 502(a)(1) and (a)(2), the Supreme Court in *Varity* recognized a cause of action under ERISA's "catchall" provision in Section 502(a)(3), which authorizes plan participants and beneficiaries to maintain an action to obtain "appropriate equitable relief" to redress violations of ERISA or the terms of an ERISA-governed plan. *Varity*, 516 U.S. at 512, 116 S. Ct. at 1078. According to the Court, "given [the objectives outlined in §§ 2(b) and 404(a)], it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy." *Id.* at 513, 116 S. Ct. at 1078.

For purposes of their Section 502(a)(3) claim, the Appellants plead in the alternative and assume that they cannot recover under Section 502(a)(1)(B) because the Plan is unambiguous and precludes vesting of their group life benefit. The Appellants allege that Independent Life and American General breached their

13

fiduciary obligations, not by withholding a vested benefit, but by engaging in a systematic pattern of misrepresentation that caused the Appellants to believe that their insurance benefit would not be changed during their retirement. According to their complaint, "Independent Life employees were routinely told by the company's management that if they stayed with the company until they were eligible for retirement, they would receive free, lifetime life insurance coverage," First Am. Compl. ¶20; and American General "ma[de] false representations about the benefits provided under the plan," *id.* ¶43, and "breached its duty to accurately communicate benefits to plan participants by sending out letters to large numbers of retirees stating that their life insurance coverage would remain in effect for their lifetime." *Id.* ¶71. The Appellants contend that they relied on these misrepresentations to their detriment in making financial plans for themselves and their families. *Id.* ¶24.

In *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007 (11th Cir. 2003), we recognized that an ERISA participant has a right to accurate information, and that an ERISA plan administrator's withholding of information may give rise to a cause of action for breach of fiduciary duty. *Id.* at 1016 n.10. Our sister circuits have reached the same conclusion, consistently holding that ERISA plan participants may state a cause of action for breach of fiduciary duty based on a

14

plan administrator's material misrepresentations or omissions. *See, e.g.*, *Unisys*, 57 F.3d at 1265-69 (holding that participants in an ERISA-governed plan had stated a claim for breach of fiduciary duty based on the plan administrator's repeated assurances that plan benefits could not be terminated after their retirement); *Howe*, 36 F.3d at 753 ("'Misleading communications to plan participants regarding plan administration will support a claim for breach of fiduciary duty.'") (internal alterations omitted) (quoting *Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988)); *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 669 (2d Cir. 1994) (holding that a plan administrator's affirmative material misrepresentations about proposed future changes to an ERISA-governed plan are actionable as a breach of fiduciary duty under ERISA); *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300-01 (3d Cir. 1993) (holding that an ERISA fiduciary's duty to provide "complete and accurate information" to its beneficiaries "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful"), *quoted in Ervast*, 346 F.3d at 1016 n.10; *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992) ("Misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of

15

benefits under a plan) will support a claim for a breach of fiduciary duty.")
(internal quotations omitted).

As an example, the Third Circuit held in *Unisys*, under materially indistinguishable circumstances, that participants in an ERISA-governed plan had stated a claim for breach of fiduciary duty based on allegations that the plan administrator had given vague and incorrect answers to them concerning the terms of their plan. *Unisys*, 57 F.3d at 1265-67. Akin to the Appellants' allegations in this case, the administrator in *Unisys* consistently misrepresented the plan over a period of years, both orally and in writing, continually representing to its employees that their medical benefits would continue in retirement for their lifetimes. *Id.* at 1265-66. Additionally, and also similar to the Appellants' allegations in this case, the administrator in *Unisys* was aware that employees relied on these misrepresentations when planning for their retirement, but did nothing to correct their misunderstanding and instead continued to reassure employees, repeatedly responding to specific questions about whether retiree benefits could change by assuring employees that they could not. *Id.* at 1266.

American General concedes that *Unisys* is indistinguishable but argues that, in this circuit, *Katz* precludes relief on the Appellants' Section 502(a)(3) claim. In *Katz*, we held that an ERISA plaintiff with an "adequate remedy" under Section

16

502(a)(1)(B) could not alternatively plead and proceed under Section 502(a)(3). *Katz*, 197 F.3d at 1088-89. Our holding in *Katz* was based on our interpretation of a passing comment in *Varity*, where the Supreme Court, *after recognizing the viability of a Section 502(a)(3) class action claim based on a plan administrator's breach of fiduciary duty*, noted, in dicta, that such relief would not always be available. *Varity*, 516 U.S. at 515, 116 S. Ct. at 1079. According to the Supreme Court in *Varity*, Section 502(a)(3) is a "catchall" provision that authorizes only "appropriate" equitable relief, and, thus, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* In light of this comment in *Varity*, we concluded in *Katz* that a breach of fiduciary duty claim could not constitute "appropriate" equitable relief within the meaning of Section 502(a)(3) for an injury that could be adequately remedied by a cause of action under Section 502(a)(1)(B). *Katz*, 197 F.3d at 1088-89.

The district court accepted American General's argument and concluded that *Katz* required dismissal of an Section 502(a)(3) claim where, as here, "the plaintiff's injury [could] be relieved with an award of benefits." According to the district court, "[i]f the remedy for [the Appellants'] injuries is an award of benefits

under Section 502(a)(1)(B), they cannot also bring claims under Section 502(a)(3). This is true even if Defendant breached its fiduciary duty."

The district court's reading of *Katz*, equating "remedy," as used in *Varity* and *Katz*, with the "relief" the Appellants seek in their complaint, is inconsistent with *Varity*, where the Supreme Court recognized a cause of action under Section 502(a)(3) because the plaintiffs "had no 'benefits due [them] under the terms of [the] plan,'" *Varity*, 516 U.S. at 515, 116 S. Ct. at 1079 (quoting ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)), not because an award of benefits could not have relieved the plaintiffs' injury. The Court noted that Section 502(a)(3) relief was "appropriate" to address the administrator's Section 404(a) violation because "[the plaintiffs] must rely on [§ 502(a)(3)] or they have no remedy at all." *Id.* Thus, the relevant concern in *Varity*, in considering whether the plaintiffs had stated a claim under Section 502(a)(3), was whether the plaintiffs also had a cause of action, based on the same allegations, under Section 502(a)(1)(B) or ERISA's other more specific remedial provisions. As the Court explained, the purpose of Section 502(a)(3) was to "act as a safety net, offering appropriate equitable relief for injuries caused by violations [of ERISA] *that § 502 does not elsewhere adequately remedy.*" *Id.* at 512, 116 S. Ct. at 1078 (emphasis added). The relief that the plaintiffs sought in their complaint was not relevant to this inquiry.

18

As we recently explained in *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284 (11th Cir. 2003), and as *Varity* itself makes clear, "[t]he central focus of the *Varity* inquiry involves whether Congress has provided an adequate remedy . . . *elsewhere in the ERISA statutory framework.*" *Id.* at 1288 (internal quotations omitted) (emphasis added); *see also Varity*, 516 U.S. at 515, 116 S. Ct. at 1079 (stating inquiry as whether "*Congress* elsewhere provided adequate relief for a beneficiary's injury") (emphasis added). Thus, for purposes of establishing whether the Appellants had stated a claim under Section 502(a)(3), the district court should have considered whether the allegations supporting the Section 502(a)(3) claim were also sufficient to state a cause of action under Section 502(a)(1)(B), regardless of the relief sought, and irrespective of the Appellants' allegations supporting their other claims.

Because the Appellants concede for purposes of this claim that they are not entitled to the group life benefit under the terms of their plan, the Appellants "must rely on [§ 502(a)(3)] or they have no remedy at all." *See Varity*, 516 U.S. at 515, 116 S. Ct. at 1079. We cannot extend *Katz* to deny the Appellants the remedy that the Supreme Court explicitly endorsed in *Varity*, or allow it to effectively eviscerate ERISA's clear mandate that fiduciaries discharge their duties "solely in the interest of the participants and beneficiaries." ERISA § 404(a), 29

19

U.S.C. § 1104(a). Accordingly, we must reverse the district court's dismissal of the Appellants' Section 502(a)(3) claim and remand for consideration of its merits.

## V. CONCLUSION

We hold that the district court properly dismissed the Appellants' Section 502(a)(1)(B) claims, but erred in dismissing their Section 502(a)(3) claim, because participants in an ERISA-governed plan that rely to their detriment on a fiduciary's misrepresentations of the plan's terms may state a claim for "appropriate equitable relief" under Section 502(a)(3) if they have no adequate remedy elsewhere in ERISA's statutory framework.

**AFFIRMED in part, REVERSED in part, and REMANDED.**