455 So.2d 806 (1984)
Melvin WILLS
v.
Dr. Robert P. KLINGENBECK.
82-958.
Supreme Court of Alabama.
June 1, 1984.
Rehearing Denied August 24, 1984.
Carl Wade Robinson and Carl Ray Robinson, Bessemer, for appellant.
James D. Pruett of Pruett, Hudson, Turnbach & Warren, Gadsden, for appellee.
BEATTY, Justice.
This is an appeal by plaintiff from a summary judgment granted to a co-defendant in an action brought to recover damages for malpractice. We reverse and remand.
The plaintiff's complaint named as defendants two medical doctors, John William Sherrer and George M. Gibbins; and an optometrist, Robert P. Klingenbeck. In the course of pleading and discovery, Dr. Klingenbeck moved for summary judgment on the ground that no genuine issue of material fact existed. Following argument, the trial court granted that motion. The trial court then certified the summary judgment as final. Rule 54(b), A.R.Civ.P. It is from the summary judgment granted to Dr. Klingenbeck that plaintiff appeals.
Plaintiff's complaint against Dr. Klingenbeck claims basically that he failed to inform the plaintiff of the consequences of an eye condition, or to refer the plaintiff to an ophthalmologist or a neurosurgeon after the discovery of that eye condition, known as papilledema of the eye. The complaint further alleges:
"That the Defendant negligently failed to diagnose a brain tumor in the head of the plaintiff and negligently failed to inform or properly advise the plaintiff that the papilledema is a symptom of a brain tumor."
From the evidence before the trial court, it appears that Melvin Wills, plaintiff, was a patient of Dr. Sherrer beginning sometime in 1977. Wills was being treated primarily for hypertension. In the latter part of January 1980, Wills went to Dr. Sherrer complaining of headaches and was hospitalized for tests related to that complaint. After a stay of several days, he was discharged from the hospital.
On February 1, 1980, Wills went to Dr. Klingenbeck for an examination for eye glasses. The facts are disputed as to what occurred during that visit. Wills insists in his deposition that Dr. Klingenbeck told him he had papilledema of the eye, but did not tell him what to do about it. Dr. Klingenbeck, by deposition, stated that he did not discover the papilledema but that he did ascertain that Will's blood pressure was very high and that he told him that he ought to see a physician about it at once.
On February 4, 1980, Wills again saw Dr. Sherrer, who discovered the papilledema, and Dr. Sherrer then referred Wills to Dr. *807 Gibbins, an ophthalmologist. Wills saw Dr. Gibbins the next day, February 5, and he confirmed Dr. Sherrer's findings.
Wills claimed he returned to collect his glasses from Dr. Klingenbeck on February 8; however, Dr. Klingenbeck recalled that it was some two to four weeks later. On this second visit, there was no mention of the papilledema or the high blood pressure, and there was no further examination. Dr. Klingenbeck stated that he assumed that Wills was being treated. Wills never returned to Dr. Klingenbeck after that visit.
In October 1980, Wills was diagnosed by Dr. J.F. McRae, Jr., a neurosurgeon in Birmingham, as having a brain tumor. Wills had been referred to Dr. McRae's group by Dr. M.R. Bernstein, also an ophthalmologist in Birmingham.
The only issue for review is whether the evidence before the trial court provided a scintilla of evidence in favor of plaintiff's claim that Dr. Klingenbeck breached a duty to plaintiff, thereby presenting a genuine issue of material fact and preventing the summary judgment in favor of co-defendant, Dr. Klingenbeck. Rule 56(c), A.R. Civ.P. The plaintiff strenuously argues that Dr. Klingenbeck, after having discovered the abnormality in Wills's eyes, was under a duty to refer him to an ophthalmologist or a neurosurgeon for the treatment of that condition. He cites Code of 1975, § 34-22-1(1), which reads in pertinent part:
"PRACTICE OF OPTOMETRY. Any of the following:
"a. Any examination of the human eyes and system for the purpose of:
"1. Ascertaining any departure from the normal;
"2. Ascertaining the status of the human visual system, including the refractive and functional abilities thereof; or
"3. Ascertaining the presence of ocular disease or ocular manifestations of systemic disease and any other departure from the normal which may require referral to other health care practitioners." (Emphasis added.)
Plaintiff contends that it is clear from the statute that Dr. Klingenbeck had a duty to refer him to other health care practitioners once he discovered the problem with his eyes.
Plaintiff further argues that Dr. Klingenbeck's claim that because Wills was already under the care of both an ophthalmologist and his own physician and that any steps taken by him to refer Wills would have been futile did not relieve him of his duty. The defendant argues in his brief to the contrary. He contends that any dispute as to this issue is not a question of material fact. Dr. Klingenbeck contends that since Wills "was already receiving treatment from physicians for his condition, regardless of whether or not the Appellee knew about the Appellant's receiving the said treatment," everything that could be done was being done. In our view, however, it is clear that the duties and responsibilities of an optometrist would not be relieved under these circumstances. The following extracts from the evidence submitted in opposition to summary judgment indicate to us that plaintiff has at least raised a scintilla on the duty to refer so as to defeat the defendant's motion. Two affidavits were submitted by plaintiff. The first one read:
"My name is Harry Wallace, and I am a doctor of optometry and have practiced as such for thirty (30) years. It is my opinion that in the course of an examination of a patient, if the optometrist finds the patient to have papilledema, it is the optometrist's duty and is good optometric practice to refer that patient to an ophthalmologist, neurologist, or neurosurgeon for further definitive medical diagnosis and treatment, or to refer the patient to his family doctor to be referred to such a specialist. It is my opinion that the failure of the optometrist to do so would be a violation of his duty to the patient and would not be good optometric practice."
The second affidavit read:
"My name is Michael R. Bernstein, and I am a medical doctor with a specialty in ophthalmology. I have previously given a deposition in [this] case.

*808 "... [I]n the situation where an optometrist observes papilledema in a patient such as Mr. Wills, it is good optometric practice and medical practice for the optometrist to refer the patient to either an ophthalmologist or neurologist or neurosurgeon for further definitive medical diagnosis and treatment. Failure of the optometrist to do so for this patient or in the case of Mr. Wills, would be a violation of the optometrist's duty to that patient or Mr. Wills, in my opinion."
In this case, there is clearly a dispute as to whether Dr. Klingenbeck in fact observed a papilledema in Wills. It is undisputed that Dr. Klingenbeck did not refer Mr. Wills to an ophthalmologist or a neurosurgeon. Dr. Klingenbeck does claim that he told Wills he should check with his physician concerning his high blood pressure. Evidence by two recognized experts, through affidavits, stated that the failure of an optometrist to refer a patient, such as Mr. Wills, for immediate treatment, would in their opinion be a violation of his duty to the patient.
The defendant offered no evidence to counter this, and in our view there was a question of fact presented for the jury. This Court stated the rule regarding the grant of summary judgment in Gross v. Republic Steel Corporation, 400 So.2d 383, 385 (Ala.1981), as follows:
"[O]n a motion for summary judgment the burden of proof is stricter than on a trial on the merits, because on the motion all reasonable inferences from the facts are to be viewed most favorably to the non-moving party, Campbell v. Alabama Power Company, Ala., 378 So.2d 718 (1979), and the burden is upon the moving party to show that no triable issue of material fact exists. Amason v. First State Bank of Lineville, Ala., 369 So.2d 547 (1979). So that if there is a scintilla of evidence supporting the non-moving party, a mere gleam, glimmer, spark or trace in support of the plaintiff's complaint, summary judgment is inappropriate. Wilson v. Liberty National Life Ins. Co., Ala., 331 So.2d 617 (1976)."
For the reasons stated, the trial court erred in entering summary judgment for the defendant, Dr. Klingenbeck. That judgment, therefore, must be, and it hereby is, reversed and the cause remanded for further proceedings.
REVERSED AND REMANDED.
MADDOX, JONES and SHORES, JJ., concur.
TORBERT, C.J., concurs specially.
TORBERT, Chief Justice (concurring specially).
The basic issue involved in this case is whether an optometrist is under a duty to refer a patient to proper health care providers when he discovers a condition known as papilledema of the eye. Affidavits were offered in opposition to the defendant's motion for summary judgment which indicate there was such a duty. Dr. Klingenbeck, the defendant, argues that he was relieved of that duty because the plaintiff, Mr. Wills, was already under the care of a physician.
Initially, I note that there is a dispute as to whether Dr. Klingenbeck was aware of the fact that Wills was seeing a physician. Knowledge on the part of Dr. Klingenbeck of whether Wills was seeing a physician would seem to be relevant in determining whether Dr. Klingenbeck was relieved of a duty. Because there was a genuine issue of a material fact with respect to the duty issue, I agree that summary judgment in favor of the defendant on that ground was improper.
However, I feel compelled to point out that this may be a case where plaintiff can establish a breach of duty but no injury that was proximately caused by that breach. If plaintiff can not establish that an injury was proximately caused by the breach of a duty, then he can not recover. Hall v. Booth, 423 So.2d 184 (Ala.1982). Dr. Klingenbeck's argument about Wills's already being under the care of physicians may not affect the outcome of the duty issue, but it may be persuasive in showing *809 that no harm was caused by the alleged breach.