903 So.2d 852 (2004)
J.I.T. SERVICES, INC.
v.
TEMIC TELEFUNKEN-RF, ENGINEERING, L.L.C.
2020786.
Court of Civil Appeals of Alabama.
December 30, 2004.
*853 James B. Carlson and Christopher S. Berdy of Sirote & Permutt, P.C., Birmingham, for appellant.
Blane H. Crutchfield and Jaime W. Betbeze of Hand Arendall, L.L.C., Mobile, for appellee.
MURDOCK, Judge.
Temic Telefunken-RF, Engineering, L.L.C. ("Temic"), contracted with J.I.T. Services, Inc. ("J.I.T."), to warehouse a consignment of DFC tuner modules, a component of automobile radio tuners. The consignment was delivered to J.I.T.'s Huntsville warehouse packaged in cartons, each containing 792 tuner modules. On December 17, 1999, a J.I.T. employee was removing a pallet of the tuners with a forklift when he allegedly caused 18 cartons of the tuners to fall 10 to 15 feet to *854 the ground. Temic alleges that the tuners were sufficiently damaged that they were no longer merchantable.
On September 15, 2000, Temic sued J.I.T. alleging negligence; Temic asserted that it had suffered $123,314.40 in damage because each of the 14,256 tuner modules in the 18 cartons would have been sold for $8.65.[1] J.I.T. contacted its insurer, Reliance National Insurance Company ("Reliance"), a Pennsylvania insurance company, which retained counsel to defend J.I.T. in the litigation. On May 17, 2001, the trial court entered an order requiring the parties to engage in mediation.
The parties set a date for mediation, but less than two weeks after the entry of the trial court's mediation order, on petition by the Insurance Commissioner of Pennsylvania, the Commonwealth Court of Pennsylvania issued an order placing Reliance in receivership. The order of the Pennsylvania court stayed all actions against any insured of Reliance for 60 days. On June 15, 2001, counsel for J.I.T. moved to stay proceedings in the case for 60 days to honor the order of the Pennsylvania court, and the trial court granted the motion. The mediator reported to the trial court on July 10, 2001, that mediation was "currently impossible" because Reliance had been placed in receivership.
In August 2001, the receiver for Reliance apparently authorized Reliance's insureds to proceed with pending litigation, and counsel for Temic and J.I.T. resumed settlement negotiations. On October 2, 2001, counsel for J.I.T. wrote to counsel for Temic:
"Thank you for your October 1, 2001, letter extending a counter-offer of $40,000. I have been authorized to respond by offering $35,000. As you mentioned, this will obviously involve full releases by all parties."
Two days later, on October 4, 2001, counsel for Temic responded:
"We accept your offer to settle this case for $35,000.00. I will begin preparing the settlement documents immediately and will try to have it [sic] to you this afternoon."
However, on the intervening day, October 3, 2001, the Pennsylvania court had declared Reliance to be insolvent and had ordered Reliance to be liquidated. All Reliance insurance policies were canceled on or before the expiration of 30 days from the date of that order. On October 9, 2001, counsel for J.I.T. again wrote Temic's counsel:
"I am in receipt of your October 4, 2001, letter accepting our offer to settle this case for $35,000. Apparently, because of Reliance's liquidation, we have been required to file a motion to Stay this case for 90 days. Consequently, as a result of the liquidation, Reliance cannot release the funds to settle this case at this time.
"At this point, there is not enough information to determine what the outcome of Reliance's situation will be. However, I have spoken with the Executive Director, Betty Davis, of the Alabama Insurance Guaranty Association regarding Reliance's situation as it relates to Reliance's insureds in Alabama. Ms. Davis believes that the Guaranty Association may take over providing the defense for Reliance's insureds in Alabama. However, I cannot at this time confirm that to be true. As a result, we *855 will have to suspend activity on this case for at least 90 days, or until we hear either from the Commonwealth Court of Pennsylvania and/or the Alabama Insurance Guaranty Association."
Over the ensuing months, neither party took any action on the case. It is not clear from the record whether this was due to a judgment by the attorneys that there was little that could be done, or if it was because the lead attorney for Temic had changed firms during this time. In either case, the trial court dismissed the case, without prejudice, for lack of prosecution on May 8, 2002.
On June 13, 2002, Temic initiated a second lawsuit against J.I.T. Count one of the new complaint reiterated the negligence claim from the original case, again demanding $123,314.40 in damages for the loss of the tuner modules. Count two of Temic's new complaint, however, alleged that the parties had reached an agreement to settle the negligence claim for $35,000 and that J.I.T. had breached that agreement by failing to pay that amount.
J.I.T. answered the complaint on July 11, 2002. On July 12, 2002, J.I.T. served interrogatories, requests for production, and a notice of deposition on Temic. The trial court again ordered the parties to mediate, and J.I.T. did not press Temic to respond to the discovery requests during the mediation process.
Mediation failed to resolve the dispute, and on December 9, 2002, J.I.T. filed a motion to compel Temic to respond to the discovery requests. On January 3, 2003, the trial court granted the motion to compel and ordered Temic to respond to J.I.T.'s discovery requests within 30 days. Temic responded to J.I.T.'s discovery requests, but it objected to certain interrogatories and requests for production.[2] On February 20, 2003, J.I.T. filed another motion to compel, this time seeking answers and the production of documents in response to the interrogatories and requests for production to which Temic had previously filed objections.
Meanwhile, Temic filed a motion for a partial summary judgment, contending that there was no genuine issue of material fact as to the breach-of-contract claim and that it was due to be granted judgment as a matter of law on its claim to enforce the alleged settlement agreement. Pursuant to Rule 56(f), Ala. R. Civ. P., J.I.T. filed a motion to defer ruling on Temic's summary-judgment motion pending completion of discovery. J.I.T. and Temic also began discussing dates on which the parties could conduct depositions of the lawyer who had accepted the $35,000 offer to settle and of Temic's corporate representatives.
The trial court set Temic's motion for a partial summary judgment, J.I.T.'s Rule 56(f) motion and J.I.T.'s motion to compel for a hearing to be conducted on March 21, 2003. Following the hearing, the trial court denied J.I.T.'s Rule 56(f) motion and granted Temic's motion for a partial summary judgment. Oddly, the trial court also granted J.I.T.'s motion to compel Temic to respond to the outstanding discovery requests. J.I.T. filed a motion to alter, amend, or vacate the judgment, which the trial court denied, and it set a trial date for Temic's negligence claim.
Counsel for Temic sent the trial court a letter pointing out that there was no need for a trial since the trial court had granted summary judgment enforcing the settlement of the original negligence claim.

*856 "We are writing to you to request clarification of recent orders entered in the above-referenced case. On March 21, 2003, the Court entered an order granting plaintiff's motion for partial summary judgment on Count II of its complaint, which sought enforcement of a settlement agreement. On April 28, 2003, the Court denied the defendant's motion to alter, amend, or vacate that judgment.
"However, the Court has also set a trial date of June 23, 2003, for this matter and ordered the plaintiff to further respond to defendant's discovery requests. It is our understanding that the order enforcing the parties' settlement agreement precludes the necessity of any further litigation of this matter at the trial level.
"Therefore, we request that the Court enter an order clarifying that the case is removed from the Court's trial docket, that all pending discovery is moot, and that the parties should proceed forthwith to exchange the settlement funds for a general release and to have the case dismissed, with prejudice."
In response, the trial court vacated its order requiring Temic to respond to J.I.T.'s discovery requests and its order setting the negligence claim for trial. J.I.T. appealed, but because the trial court's actions left some question as to the finality of the partial summary judgment, this court remanded the cause for the trial court to enter a Rule 54(b), Ala. R. Civ. P., order certifying as final its judgment on the breach-of-contract claim. That is the judgment from which J.I.T. now appeals. We review a summary judgment de novo, applying the same standard that was applied in the trial court.
"It is well settled that a motion for summary judgment is properly granted in situations where there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Clay v. River Landing Corp., 601 So.2d 919 (Ala.1992). In considering a motion for summary judgment, the trial court must view all reasonable inferences from the evidence in a light most favorable to the non-moving party. Wills v. Klingenbeck, 455 So.2d 806 (Ala. 1984). Further, the movant has the burden of establishing that there is no genuine issue of material fact. Burks v. Pickwick Hotel, 607 So.2d 187 (Ala. 1992). If the movant meets its burden, then the burden shifts to the non-moving party, who must show by substantial evidence that a genuine issue of material fact does exist in order to withstand the motion for summary judgment. Burks, 607 So.2d 187; Clay, 601 So.2d 919."
Rich v. Warren Mfg., Inc., 634 So.2d 1015, 1016-17 (Ala.Civ.App.1994) (emphasis added).
Among other things, J.I.T. argues on appeal that there was substantial evidence tending to show that the parties to the settlement agreement intended that Reliance was to be directly responsible for paying the settlement amount to Temic. In light of this argument, and our disposition of this appeal based thereon, we pretermit consideration of the other arguments made by J.I.T. on appeal.
"The fundamental determination in the legal construction of contracts is the real intention of the parties. 17 C.J.S. Contracts § 49 (1963). The primary rule of construction is that the court must, if possible, ascertain and give effect to the common intention of the parties, so far as that may be done without contravention of legal principles, statutes, or public policy. C.J.S., Id., at 48."
Parr v. Godwin, 463 So.2d 129, 132 (Ala. 1984).
In Port City Construction Co. v. Henderson, 48 Ala.App. 639, 266 So.2d 896 *857 (Civ.App.1972) (relied upon in Parr v. Godwin), the Court of Civil Appeals noted that when a written contract is "ambiguous, incomplete or uncertain as to all of the intentions of the parties, the court may consider extrinsic parol evidence as to surrounding matters and circumstances, including additional terms not included in the writing, in order to determine the actual intent of the parties to the agreement." 48 Ala.App. at 642-43, 266 So.2d at 899. It is a well-established exception to the general rule regarding use of parol evidence in the construction of contracts (the general rule being that when no facial ambiguity is present in a written contract the court may not consider extrinsic evidence) that matters collateral to the written terms of the contract may make the meaning of that contract uncertain. Mass Appraisal Servs., Inc. v. Carmichael, 404 So.2d 666 (Ala.1981). In such a case, the collateral matter may be admitted both to establish a latent ambiguity in the contract and to aid in discerning the true intention of the parties to the contract in relation to that ambiguity. Id. As our Supreme Court explained in Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932 (Ala.1983):
"The threshold issuewhether or not the contract is ambiguousis itself a question of law. In answering this threshold question, the trial court may consider extrinsic evidence in order to determine whether there is a latent ambiguity arising from some collateral matter outside the writing."
431 So.2d at 942 (citations omitted). Likewise, in Medical Clinic Board of Birmingham v. Smelley, 408 So.2d 1203 (Ala.1981), our Supreme Court noted that the general statement of the parol evidence rule begs the question whether a writing actually is a complete and unambiguous statement of the agreement between the parties. The Supreme Court explained that an ambiguity may exist in what otherwise appears to be a clear and unambiguous writing if "`there is some collateral matter which makes the meaning uncertain; and parol or other extrinsic evidence is admissible to explain or clarify a latent ambiguity.'" "408 So.2d at 1206 (quoting Ford v. Ward, 272 Ala. 235, 240, 130 So.2d 380, 384 (1961)).
We have considered all of the circumstances and communications of the parties leading up to the exchange of the two relatively brief letters upon which Temic relies in arguing that the trial court's judgment should be affirmed. Based on our review of the record before us, we conclude that those letters are not an unambiguous statement of the agreement between the parties. The final two letters exchanged between the parties do not expressly address whether payment of the settlement amount is to be made directly by J.I.T. or by Reliance. Likewise, they do not address whether the settlement agreement would continue to be enforceable against J.I.T. in the event the poor financial condition of Reliance, which had previously delayed the settlement discussions, resurfaced in a manner that interfered with Reliance's ability to fund a settlement. While the former omission would not ordinarily be a basis for not enforcing a settlement agreement of the nature presented, in the particular context of the communications and other circumstances surrounding this settlement agreement, we conclude that this is a proper case to consider collateral matters in determining the true intention of the parties.
Having considered the parties' communications, their course of dealing, and the other circumstances reflected in the record, we find substantial evidence indicating that, in sending and receiving the letters at issue, the parties contemplated that Reliance, and not J.I.T., would pay the settlement amount.
*858 In light of the foregoing, we hold that there remain genuine issues of material fact as to the true intentions of the parties to the contract at issue. Temic, therefore, was not entitled to a summary judgment. We reverse the trial court's summary judgment and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and THOMPSON, JJ., concur.
PITTMAN, J., concurs specially, with writing.
PITTMAN, Judge, concurring specially.
I concur in the main opinion. The main opinion correctly does not base its holding upon one of the principal cases relied upon by J.I.T., O'Gwynn v. Roper, No. 00-0273-CB-S (S.D.Ala. May 15, 2002) (not reported in F.Supp.). In O'Gwynn, the federal district court considered the effect of a written agreement providing that the defendants in that case had agreed to pay certain sums to the plaintiff "through their insurer," i.e., Reliance (emphasis added); thus, looking to the ordinary, plain, and natural meaning of the language of that agreement, the federal district court concluded that the agreement was unambiguous. Even though Reliance was the insurer both of the defendants in that case and of J.I.T. in this case, O'Gwynn cannot properly be applied here because no similar express term appears in the attorneys' letters in this case.
Grayson v. Hanson, 843 So.2d 146, 150 (Ala.2002), states that "settlement agreements, like other agreements, are not valid when there has been no meeting of the minds with regard to the final terms of the agreement ... or when the parties have merely agreed to later agree." The pertinent portions of the letters exchanged by counsel for the parties indicate the parties' intent to be bound by written releases that were to be prepared in the future. Under Port City Construction Co. v. Henderson, 48 Ala.App. 639, 642-43, 266 So.2d 896, 899 (Civ.App.1972), the written documents allegedly amounting to a settlement agreement are facially incomplete and are susceptible to clarification and amplification by extrinsic evidence at trial, including evidence adduced by J.I.T. that the funding source with respect to the proposed settlement was Reliance and not J.I.T. Of course, whether the trier of fact may properly reject any or all such extrinsic evidence is not at issue in this appeal.
NOTES
[1] The record reveals that Temic made a claim for $123,314.40 to its own insurance company but that its insurer valued the loss at $75,414.24. This lesser amount reflects the $5.29 cost for Temic to manufacture or purchase each tuner. Temic then assigned its rights to proceed against J.I.T. to its insurer, with the insurer to prosecute the claim in Temic's name. This is therefore a subrogation claim.
[2] The copy of the responses in the appellate record is not signed by any Temic representative, but only by its counsel.