[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-14104

_____

JOHN E. KLAAS,
on behalf of himself and all others
similarly situated,

2:15-cv-00406-ECM-KFP

Plaintiff-Appellant,

FRANK M. BERARDI,
on behalf of himself and all others
similarly situated,
DAVID R. SANGSTON,
on behalf of himself and all others
similarly situated,
TERRY G. MOUNTFORD,
on behalf of himself and all others
similarly situated,
ELMER H. CEISEL,

2                    Opinion of the Court                    20-14104

on behalf of himself and all others
similarly situated,

                                                              Plaintiffs,

*versus*

ALLSTATE INSURANCE COMPANY,

                                                     Defendant-Appellee.

_____

GARNET TURNER,                          2:13-cv-00685-ECM-KFP
individually and on behalf of all others
similarly situated,
DONALD KERR,
individually and on behalf of all others
similarly situated,

                                                              Plaintiff,


JAMES CARTRETTE,
BILL HUFF,
KATHY SHEPHERD,
VERNON BENTLEY,
TED SPEIWAK

20-14104              Opinion of the Court                    3

                                        Plaintiffs-Appellants,


HERB WOFFORD,
ALBERTA NIXON,
CHARLIE DRAKE,


                                                    Plaintiffs,


HERBERT VIDALES,
RICHARD SCHOLL,


                                        Plaintiffs-Appellants,


WILLIAM HARBIN, et al.,


                                                    Plaintiffs,

*versus*

ALLSTATE INSURANCE COMPANY,

                                        Defendant–Appellee.

_____

Appeals from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:13-cv-00685-ECM-KFP

_____

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

JILL PRYOR, Circuit Judge:

This appeal arises out of Allstate Insurance Company's decision to stop paying premiums on retired employees' life insurance policies. For many years, as part of its employee benefit plan, Allstate offered employees who met certain qualifications life insurance that continued into retirement. Allstate provided its employees with information about life insurance and other offered benefits in summary plan descriptions. The summary plan descriptions reserved for Allstate the right to modify or terminate the benefit plan. At times, Allstate made representations, both orally and in writing, to employees that their retiree life insurance benefits were "paid up" or "for life." In 2013, however, Allstate informed former employees who retired after 1990 that it would stop paying the premiums on their life insurance policies at the end of 2015.

After Allstate made this decision, two putative classes sued the company seeking declaratory and injunctive relief. One group—the Turner retirees, represented by Garnet Turner and other named plaintiffs —is made up of retired former Allstate

employees to whom Allstate no longer provides life insurance. The other group—the Klaas retirees, represented by named plaintiff John Klaas—consists of individuals who took part in a special retirement opportunity with Allstate; the company also decided to stop paying the premiums for these retirees' life insurance. Both groups of retirees alleged in the district court that Allstate violated the Employee Retirement Income Security Act of 1974 ("ERISA") by no longer paying the insurance premiums. They also alleged that Allstate breached its fiduciary duty to them by failing to provide full and accurate information about their retiree life insurance.

After extensive discovery, the district court granted summary judgment to Allstate on all claims. The district court concluded that the benefit plan documents unambiguously gave Allstate the power to terminate the life insurance benefits. The court also concluded that both the Turner and Klaas retirees' claims for breach of fiduciary duty were time barred.

On appeal, the Turner named plaintiffs and Klaas[1] argue that the district court erred by concluding that the language in the benefit plan documents was unambiguous and by failing to consider extrinsic evidence. In addition, they assert that the district court incorrectly determined that their breach of fiduciary duty claims were untimely. After careful consideration of the briefs and record, and with the benefit of oral argument, we affirm.

---

[1] The other named plaintiffs in the putative Klaas class voluntarily dismissed their appeals.

## I.    BACKGROUND

We start with the facts specific to the Turner retirees and then turn to the Klaas retirees. We conclude our discussion of the facts by describing Allstate's decision to stop paying the insurance premiums and the litigation that followed.

## A.    Turner Retirees

While the Turner retirees worked for Allstate, the company communicated to them about retiree life insurance through benefit documentation circulated to all employees and other written and verbal communications. The initial benefit documents Allstate issued before 1990 discussed life insurance benefits but did not include a reservation-of-rights provision—language that reserved for Allstate the ability to modify or terminate the benefits plan. In 1990, Allstate introduced reservation-of-rights language into the benefit documents. Allstate's communications about the life insurance benefits took place over the course of several decades and changed over time.

### 1.    Employee Benefit Documents Distributed by Allstate

In the early 1980s, Allstate distributed booklets to its employees entitled "This is Allstate." The booklets discussed, among other things, the retirement benefits available to Allstate employees. These benefits included retiree life insurance. Some of the booklets that were distributed throughout the 1980s described the retiree life insurance as "Paid Up" or provided at "no cost." *See,*

*e.g.*, Doc. 293-5 at 19; Doc. 293-9 at 19.[2] The Turner retirees worked at Allstate when the company distributed these booklets, but none of them retired during the 1980s.

Beginning in 1990, Allstate distributed to its employees summary plan descriptions ("SPDs") entitled "Allstate Employee Group Life and Accidental Death & Dismemberment Insurance," which described the company's offered benefits. The SPDs identified Allstate (through its Employee Benefits Division Director) as the administrator of the benefit plan. The SPDs Allstate circulated to its employees throughout the 1990s described the retiree life insurance benefits as "provided at no further cost to" the retiree. *See, e.g.*, Doc. 312-1 at 11.

Allstate included reservation-of-rights language in the SPDs. Specifically, the 1990 and 1991 SPDs said "[t]he Employer intends to continue the Plan indefinitely, but reserves the right to change, amend or terminate the Plan or the provisions of the Plan at any time." *Id.* at 5; Doc. 313-1 at 5. The 1992 SPD also used this language and added that "[t]he Plan's participants or beneficiaries do not have a vested right in any of the Plan's benefits." Doc. 313-2 at 8. The 1995 SPD altered the wording of the provision slightly but still provided that the plan did not create any vested rights. It stated that "Allstate necessarily reserves the right to modify, amend, suspend, or terminate" the insurance plan at any time. Doc. 313-3 at

---

[2] "Doc." numbers refer to district court docket entries in Case No. 2:13-cv-00685-ECM-KFP.

9. Allstate issued new SPDs in 1998 and 1999 that contained the same language as the 1995 version but added that Allstate could modify or amend the insurance plan retroactively.

During this same period, Allstate annually distributed to its employees a booklet called "Your Personal Statement of Total Compensation." This booklet contained a provision reserving for Allstate the right to change, amend, or terminate the provided benefits. The booklet also explained that the official plan documents, including the SPDs, governed the plan's insurance benefits.

Starting in 2001, Allstate issued SPDs called "Allstate Cafeteria Plans." These SPDs described the retiree life insurance benefits as "provided at no cost to" retirees and included reservation-of-rights language that was very similar to the earlier SPDs. Doc. 320-14 at 4–7. A few years later, Allstate circulated SPDs that specifically addressed retiree benefits. Allstate issued one of these SPDs, entitled "The Allstate Group Medical Coverage for Former Employees Plan Summary Plan Description: Retiree Life Insurance," in January 2007. Doc. 314-7 at 2. This 2007 SPD included a "Plan Amendment and Termination" provision that reserved for Allstate the right to "modify, amend, suspend, or terminate any of the . . . benefits." *Id.* at 6.

In 2010, Allstate began to divide its retirees into former claims employees and former non-claims employees and sent both groups SPDs about their respective life insurance plans. The SPDs for both groups during this time stated under "General Provisions" that Allstate would pay the "cost of [the retiree's] Plan benefits."

Doc. 315-10 at 5; Doc. 315-9 at 5. The SPDs also included a "No Vesting Rights" provision stating that neither participants nor beneficiaries had a vested right in any of the plan's benefits. Doc. 315-10 at 7; Doc. 315-9 at 7. In addition, these SPDs contained reservation-of-rights language allowing modification or termination of the benefits.

### 2.    Allstate's Other Communications Concerning Life Insurance Benefits

Allstate representatives also made oral statements to Turner retirees about life insurance benefits. Retirees testified that while they still worked at the company, Allstate representatives told them that they would receive a "paid-up" life insurance policy upon retirement. Doc. 331-7 at 2. A retiree named Ted Spiewak testified that an individual in Allstate's human resources department told him his life insurance was "paid for life." Doc. 331-8 at 3. Another retiree, Herbert Vidales, likewise testified that an Allstate representative told him his "life insurance would be fully paid for the rest of [his] life." Doc. 331-2 at 6. Allstate representatives made similar statements to different Turner retirees at the time of their hiring and at retirement seminars, annual benefit meetings, and performance reviews. Members of Allstate management made such comments as recently as 2006.

Along with these oral communications, some Turner retirees received written communications about retiree life insurance benefits. In 1997, a retiree named Hart Cartrett received a letter entitled "Pre-Retirement Seminar–Questions & Answers" that

described his life insurance as "paid up." Doc. 44-2 at 1. Before his retirement in 1995, Spiewak received a document that stated, "Life Insurance may continue for life at no cost to you." Doc. 44-8 at 1. He also received a letter at retirement describing his life insurance benefit as "free coverage." Doc. 44-10 at 1. According to the record, the most recent written communication by Allstate occurred in 1999, when Vidales received a letter stating his life insurance would "continue[] without further contribution." Doc. 44-15 at 1.

### B.    Klaas Retirees

In 1994, Allstate offered certain employees a Special Retirement Opportunity ("SRO"), aiming to incentivize retirement and reduce costs. Eligible employees received a booklet describing the SRO as an opportunity "to take advantage of salary continuation, retiree medical and life insurance benefits, and an enhanced retirement benefit." Doc. 329-18 at 5. To participate in the SRO, eligible employees had to retire by the end of November 1995.

The booklet described how the SRO would impact retiree benefits. It stated that employees who accepted the SRO would receive "an additional three years to [their] length of service . . . and five years to [their] age." *Id.* at 18. These credits would then be used to calculate an employee's enhanced retirement benefits. In a section devoted specifically to retiree life insurance benefits, the booklet explained that employees could use the three-year service credit to reach the ten-year participation requirement needed for retiree life insurance eligibility. In addition, the booklet stated that eligible retirees would receive life insurance at no cost to them, but they

should check their SPDs for more details. Under a bolded heading entitled "Important," the SRO warned that "[t]he benefits, plans, and programs described or referred to in this booklet may be modified or terminated at any time." *Id.* at 23. In a separate section that dealt with salary continuation benefits paid out under the SRO, a provision entitled "Plan Amendment and Termination" included additional reservation-of-rights language.

Employees who accepted the SRO had to sign a "General Release and Waiver Agreement" (the "Waiver Agreement"). *Id.* at 34. The Waiver Agreement required employees to waive any claims (including federal discrimination claims) against Allstate related to their employment or their decision to retire. Under the terms of the Waiver Agreement, employees waived these claims as consideration for the SRO benefits.

Allstate made other representations to the Klaas retirees about the SRO benefits. Allstate's then-CEO sent a letter to SRO-eligible employees in October 1994. The letter explained the different retirement incentives included in the SRO, describing the retiree life insurance as being provided at "no cost" to the retiree. Doc. 329-5 at 3. Allstate representatives sent additional letters to two SRO-eligible employees before the November 1995 retirement

deadline. These letters similarly stated that retiree life insurance benefits would be provided at no cost to the retirees.[3]

Klaas accepted the SRO in 1995. He was one of approximately 600 Allstate employees to do so.

### C.    The Termination of Retiree Life Insurance Benefits

At some point in 2012 or 2013, Allstate started exploring ways to reduce costs. Allstate CEO Tom Wilson decided to terminate life insurance coverage for individuals who retired after 1990. Allstate chose 1990 as the cut-off date because no SPD before that time contained a reservation-of-rights provision. In July 2013, Allstate sent letters to these retirees, informing them that "beginning January 1, 2016, we have made the decision to no longer pay the premium for your current retiree life insurance benefit." Doc. 74-3 at 2. A short time later, Allstate amended its employee benefit plan, removing this benefit.

### D.    Procedural History

In September 2013, the Turner retirees sued Allstate, seeking injunctive relief and a declaratory judgment. The Klaas retirees

---

[3] Allstate also produced a document entitled "Special Retirement Opportunity (SRO) Question & Answer Log." One of the questions posed in the document quoted the "Plan Amendment and Termination" provision from the booklet. It then asked, "[i]f an employee accepts the SRO, is Allstate later going to terminate benefits or say the lump sum is not available?" Doc. 329-19 at 19. The document did not answer this question. The record is unclear as to who saw this document.

filed their suit seeking the same relief in March 2015. The district court consolidated the cases.

Before the district court, the Turner retirees alleged that Allstate had violated ERISA § 502(a)(1)(B) by cancelling the retiree life insurance benefits. The Klaas retirees alleged that Allstate violated ERISA § 502(a)(1)(B) by cancelling the life insurance they received at retirement after accepting the SRO. The Turner retirees also alleged that Allstate violated its fiduciary duty to them by making misrepresentations that their life insurance would remain at no cost until their death. The Klaas retirees alleged that Allstate violated its fiduciary duty to them by failing to provide complete and accurate information about their retiree life insurance before they accepted the SRO.

At the close of discovery, Allstate moved for summary judgment on both groups' claims. The district court granted the company's motions. The court determined that the documents governing the retiree life insurance benefits for both the Turner and Klaas retirees unambiguously gave Allstate the right to modify or terminate benefits. The court further determined that all the plaintiffs' claims for breach of fiduciary duty were barred by the applicable statute of repose.

Several of the Turner named plaintiffs and Klaas appealed to this Court.

## II.    STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must draw all reasonable inferences in favor of the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

## III.    DISCUSSION

The Turner named plaintiffs and Klaas argue that the district court erred by granting summary judgment on their ERISA § 502(a)(1)(B) claims. They assert that the district court incorrectly concluded that the SPDs governing their benefits unambiguously gave Allstate the right to terminate their retiree life insurance benefits. The Turner named plaintiffs and Klaas also argue that the district court erred by determining that their breach of fiduciary duty claims against Allstate were time barred. We agree with the district court's conclusions for the following reasons.

### A.    Allstate's Actions Do Not Give Rise to § 502(a)(1)(B) Claims Because Under the SPDs It Could Terminate the Life Insurance Benefits.

ERISA § 502(a)(1)(B) "creates a private right of action for a plan participant or beneficiary to recover benefits due under the terms of a health insurance plan." *Gables Ins. Recovery, Inc. v. Blue*

*Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1337 (11th Cir. 2015). The remedies authorized by § 502(a)(1)(B) are "akin to common law breach of contract causes of action." *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004).[4] We first address the Turner retirees' § 502(a)(1)(B) claim before turning to the Klaas retirees' claim under this subsection.

### 1.    Turner Retirees

The district court determined that Allstate did not breach the terms of its benefit plan with the Turner retirees because the SPDs gave Allstate the right to terminate the life insurance benefits. The Turner named plaintiffs contend that the district court incorrectly interpreted the language in the SPDs when it granted summary judgment. Specifically, they assert that the district court should have used extrinsic evidence to determine whether the language was ambiguous. We disagree.

Before granting summary judgment, the district court examined the reservation-of-rights language in the SPDs that Allstate issued to its employees. The SPDs are "the statutorily established means of informing participants of the terms of the plan and its benefits." *Alday v. Container Corp. of Am.*, 906 F.2d 660, 665 (11th

---

[4] In addition to the breach of contract cause of action, we have "recognized a very narrow common law doctrine under Section 502(a)(1)(B) for equitable estoppel . . . ." *Jones*, 370 F.3d at 1069. In the district court, the Turner retirees brought an equitable estoppel claim, and the district court granted summary judgment to Allstate on the claim. The Turner named plaintiffs do not challenge this ruling on appeal.

Cir. 1990). "Congress intended that plan documents and the SPDs exclusively govern an employer's obligations under ERISA plans." *Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir. 1988).

Federal courts have "[b]orrow[ed] from state contract law" to "develop[] rules of contract interpretation for construing ERISA plans." *Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1307 (11th Cir. 2016). These rules require us to "look to the plain and ordinary meaning of the policy terms to interpret the contract." *Id.* When policy terms are unambiguous, the analysis ends there, but if ambiguity exists, we construe the policy against the drafter. *Id.*

The Supreme Court of the United States expounded on ERISA plan interpretation under § 502(a)(1)(B) in *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015). There, a group of retirees alleged that their former employer had promised them contribution-free healthcare benefits for life. *Tackett*, 574 U.S. at 432. Sometime later, the employer announced that it would start requiring retirees to contribute to the cost of these benefits. *Id.* The retirees sued the employer, bringing a claim under ERISA § 502(a)(1)(B). *Id.* On appeal, the United States Court of Appeals for the Sixth Circuit let their claims proceed because the court's precedent allowed it to "infer[] that parties to collective bargaining would intend retiree benefits to vest for life." *Id.* at 433.

The Supreme Court vacated the Sixth Circuit's judgment, stating, "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with

its plainly expressed intent." *Id.* at 435 (internal quotation marks omitted). The Supreme Court remanded with instructions to interpret the benefits "apply[ing] ordinary principles of contract law. . . ." *Id.* at 442.

Allstate has included reservation-of-rights language in its SPDs since 1990. The earliest retirement among the named plaintiffs in the putative Turner class occurred at the end of 1994. At that time, the Turner retirees had access to at least the 1990 SPD, stating that Allstate "reserves the right to change, amend or terminate the Plan or the provisions of the Plan at any time." Doc. 312-1 at 5. They also had access to the 1992 SPD, which added that the "Plan's participants or beneficiaries do not have a vested right in any of the Plan's benefits." Doc. 313-2 at 8. We previously have determined that an "SPD clearly provides that the retiree health insurance plan may be terminated or modified" if it includes a reservation-of-rights provision that allows the plan administrator to "terminate, suspend, withdraw, amend or modify the Plan in whole or part at any time." *Alday*, 906 F.2d at 662, 665. Given that Allstate used substantially similar language in its SPDs from 1990 onward, we conclude that the documents unambiguously gave Allstate the right to terminate the retiree life insurance benefits. The provisions in the SPDs from 1990 onward stating that Allstate would provide life insurance to employees "at no cost" were subject to the limitation that the provisions continued to exist—i.e., that they were not terminated.

This interpretation of the SPDs construing the reservation-of-rights provisions as modifying the guarantee of life insurance "at no cost" is consistent with how our sister circuits have interpreted similar provisions. In *Vallone v. CNA Financial Corp.*, retirees brought a § 502(a)(1)(B) claim against their former employer after it cancelled their monthly health care allowance. 375 F.3d 623, 626 (7th Cir. 2004). The employer conceded that the allowance was a lifetime benefit, but the United States Court of Appeals for the Seventh Circuit determined that "lifetime may be construed as good for life unless revoked or modified." *Id.* at 633 (internal quotation marks omitted). The court further stated that this interpretation was "particularly plausible" when a contract contained a reservation-of-rights provision. *Id.* Because the agreement between the employer and the retirees contained a reservation-of-rights clause, the Seventh Circuit concluded that the employer could terminate the health care allowance. *Id.* at 635–38.

Similarly, in *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation*, a company's benefit plan provided retirees with medical benefits but also included reservation-of rights language stating that "[t]he Company expects to continue the Plans, but *reserves the right to change or end them at any time.*" 58 F.3d 896, 900 (3d Cir. 1995) (emphasis in original). After the company terminated the benefits, the retirees sued, arguing that the "at any time" language was ambiguous because it was inconsistent with the plan's promise of lifetime benefits. *Id.* at 902–03. On appeal, the Third Circuit held that the "for life" language and the reservation-

of-rights provision were not internally inconsistent. *Id.* at 903–04. The *Unisys* court concluded that the wording in the reservation-of-rights provision was "broad and unambiguous" and provided the employer with the ability "to terminate benefits at any time." *Id.* at 904–05; *see also Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1512 n.2 (10th Cir. 1996) ("We recognize that the weight of case authority supports the *Unisys* approach, that a reservation-of-rights clause allows the employer to retroactively change the medical benefits of retired participants, even in the face of clear language promising company-paid lifetime benefits."), *abrogated on other grounds by CIGNA Corp. v. Amara*, 563 U.S. 421 (2011).

The Turner named plaintiffs contend that we should not determine whether the SPDs unambiguously gave Allstate the right to terminate the retiree life insurance benefits without first considering extrinsic evidence. They point to Allstate's oral and written representations that described the retiree life insurance as "for life," "paid up," or provided "at no cost" as creating ambiguity. In support of their argument for considering extrinsic evidence, the Turner retirees cite Alabama caselaw stating, "[i]t is a well-established exception to the general rule regarding use of parol evidence in the construction of contracts . . . that matters collateral to the written terms of the contract *may make the meaning of that contract uncertain.*" *J.I.T. Servs., Inc. v. Temic Telefunken-RF, Eng'g, L.L.C.*, 903 So. 2d 852, 857 (Ala. Civ. App. 2004) (emphasis in original). But they fail to provide any authority in which this principle has been applied to interpret ERISA plans. Federal courts "may use

state common law as the basis of the federal common law only if the state law is consistent with the policies underlying the federal statute in question." *Nachwalter v. Christie*, 805 F.2d 956, 959–60 (11th Cir. 1986). Here, considering extrinsic evidence would run counter to the Supreme Court's statement in *Tackett* that ERISA welfare benefit plans should ordinarily "be enforced as written." *Tackett*, 574 U.S. at 435 (internal quotation marks omitted); *see also Alday*, 906 F.2d at 665 ("[A] retiree's right to . . . benefits . . . can only be found if it is established by contract under the terms of the ERISA-governed benefit plan document."). In addition, examining extrinsic evidence would ignore the "Your Personal Statement of Total Compensation" documents that Allstate sent to its employees from 1990 to 1999. Each of these documents specified that the SPDs governed the benefits. For these reasons, we decline to consider extrinsic evidence in analyzing the unambiguous terms of the SPDs.

Because the SPDs unambiguously gave Allstate the right to terminate the retiree life insurance, the Turner retirees have no right to these benefits and therefore cannot recover them under § 502(a)(1)(B). The district court correctly granted summary judgment to Allstate on this claim.

### 2.    Klaas Retirees

We turn now to the Klaas retirees' § 502(a)(1)(B) claim. The district court determined that Allstate reserved the right to terminate the retiree life insurance of the employees who accepted the SRO. The SRO booklet distributed to the Klaas retirees contained

the following language: "The benefits, plans, and programs described or referred to in this booklet may be modified or terminated at any time." Doc. 329-18 at 23. Moreover, in a section describing retiree life insurance specifically, the SRO booklet instructed readers to see their "summary plan description for details." *Id.* at 21. The 1992 SPD (the most recent before the SRO was initiated) stated that Allstate "reserves the right to change, amend or terminate the Plan or the provisions of the Plan at any time." Doc. 313-2 at 8.

Like the SPDs that applied to the Turner retirees' claim, the 1992 SPD and the SRO booklet's reservation-of-rights provisions resemble provisions we and other circuits previously interpreted as unambiguously allowing an employer to terminate a benefit plan. *Alday*, 906 F.2d at 662, 665; *Vallone*, 375 F.3d at 635; *Unisys*, 58 F.3d at 904–05. The Klaas retirees' claim, then, fails for the same reasons as the Turner retirees' claim.

Despite this authority, Klaas argues that the "at any time" language from the reservation-of-rights provision is at least ambiguous because it could reasonably be interpreted to mean "at any time prior to acceptance of the SRO." Klaas Appellant's Br. at 15. In addition, he argues that because the reservation-of-rights provision is ambiguous, the district court should have considered extrinsic evidence. We are not persuaded that such ambiguity exists.

Klaas primarily relies upon the Third Circuit's decision in *In re New Valley Corp.*, 89 F.3d 143 (3d Cir. 1996). In *New Valley*, the Third Circuit held that a reservation-of-rights provision in a

pension plan that included "at any time" language failed to unambiguously reserve for the employer the right to terminate a retiree pension plan. *Id.* at 151–52. The Third Circuit remanded the case with instructions that the bankruptcy court consider extrinsic evidence to clarify the pension plan's meaning. *Id.* at 154. But, as the opinion made clear, *New Valley* involved a "uniquely narrow category of top hat benefit plans" which, unlike typical welfare benefit plans, were exempt from ERISA's writing requirements and could not give rise to a breach of fiduciary duty claim.[5] *Id.* at 153. The Third Circuit relied on the unique characteristics of the top hat plan to distinguish the case from *Unisys,* in which the Third Circuit "held a clause reserving the right to terminate or amend unambiguous and controlling." *Id.* at 146.

The facts of the Klaas retirees' case are easily distinguishable from *New Valley*. Allstate's retiree life insurance benefit is not part of a top hat plan, so the rationale in *New Valley* is inapplicable to this case. Top hat plans differ from most ERISA plans in that they are not subject to a writing requirement. *Id.* at 153. In contrast, no party asserts that the benefits plan at issue here is exempt from ERISA's writing requirement. As the Third Circuit pointed out in *New Valley*, this writing requirement forms "the basis [for] . . . limiting employee-litigants to the language of the plan documents."

---

[5] A top hat plan is an unfunded plan that "is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees." *New Valley*, 89 F.3d at 148 (internal quotation marks omitted).

*Id.* The Third Circuit further distinguished top hat plans because beneficiaries of those plans cannot bring breach of fiduciary duty claims against employers. *Id.* at 153–54. The Klaas retirees could—and did—bring a breach of fiduciary duty claim against Allstate. Furthermore, the reservation-of-rights language in the SRO booklet and the 1992 SPD is very similar to language that the Third Circuit concluded was unambiguous in *Unisys*. *Compare* Doc. 313-2 at 8 ("[Allstate] reserves the right to change, amend or terminate the Plan or the provisions of the Plan at any time.") *with Unisys*, 58 F.3d at 900 ("'The Company expects to continue the Plans, but reserves the right to change or end them at any time." (emphasis omitted)). For these reasons, the reasoning of *New Valley* does not apply to Klaas's claim.

Klaas points out that to participate in the SRO eligible employees had to sign the Waiver Agreement. Under the Waiver Agreement, SRO-eligible employees waived any claims against Allstate related to their employment or retirement "[i]n consideration for the benefits that [they would] receive under the Allstate Special Retirement Opportunity ('SRO')." Doc. 329-18 at 34. Klaas contends that the district court's interpretation of the reservation-of-rights provision would allow Allstate to terminate all its retirement benefits, rendering consideration for the waiver illusory. He also contends that this result would violate a provision of the Age Discrimination in Employment Act ("ADEA"), under which employees cannot waive their rights or claims under the act without

receiving consideration. 29 U.S.C. § 626(f)(1)(D). We reject his arguments.

According to the SRO booklet, employees who took part in the SRO would receive "a credit of an additional three years to [their] length of service . . . and five years to [their] age." Doc. 329-18 at 18. This credit, in turn, would be used to calculate the employees' actual retirement benefits. By accepting the SRO, employees did not automatically receive retirement benefits; rather, they received year and age credits that could make them eligible for retirement benefits. For example, to receive retiree life insurance, an employee had to participate in the plan for 10 continuous years before retirement, but with the three-year credit, employees would be eligible after only participating for seven continuous years. These year and age credits were the consideration for signing the Waiver Agreement. Although the reservation-of-rights provision gave Allstate the ability to terminate "benefits, plans, and programs," Doc. 329-18 at 23, it said nothing about Allstate's ability to terminate the year and age credits that rendered employees eligible for these benefits, plans, and programs. The district court's decision allowing Allstate to terminate retirement benefits left intact the year and age credits as consideration for signing the Waiver Agreement. Thus, the district court's interpretation does not make the consideration illusory.

In Klaas's case, he would not have needed the three-year credit to qualify for the retiree life insurance because he began working for Allstate in 1966. He did, however, receive the five-year

age credit, which allowed him to receive shares of stock at his retirement. This five-year age credit was Klaas's consideration for the Waiver Agreement. Further, even if Klaas had not received consideration, this failure would only violate the ADEA, not ERISA. "ERISA § 502(a)(1)(B) authorizes a plan participant to bring suit 'to recover benefits due to him *under the terms of his plan,* to enforce his rights *under the terms of the plan,* or to clarify his rights to future benefits *under the terms of the plan.*'" *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013) (emphasis in original) (quoting 29 U.S.C. § 1132(a)(1)(B)). It does not authorize lawsuits alleging ADEA violations. And Klaas asserted no ADEA claim in his complaint.

In summary, before taking advantage of the SRO, the Klaas retirees received an SRO booklet that contained reservation-of-rights language allowing Allstate to terminate retirement benefits at any time and referred readers to the SPD that contained a similar provision. Outside of the Third Circuit's decision in *New Valley*, which dealt with a distinct type of benefit plan not at issue here, courts have interpreted this language to unambiguously give the plan administrator the authority to terminate benefits. *Alday*, 906 F.2d at 662, 665; *Unisys*, 58 F.3d at 904–05. Because the language at issue is unambiguous on its face, we do not consider any extrinsic evidence proffered by Klaas to interpret it. We conclude, then, that the district court did not err in determining that Allstate could terminate the retiree life insurance and granting summary judgment to Allstate on Klaas's § 502(a)(1)(B) claim.

### B.    The Retirees' Breach of Fiduciary Duty Claims Are Time Barred.

The Turner named plaintiffs and Klaas next argue that the district court erred by granting summary judgment on their breach of fiduciary duty claims brought under ERISA § 502(a)(3).[6] One of ERISA's primary purposes is "to protect . . . the interests of participants . . . and . . . beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries . . . and . . . providing for appropriate remedies . . . and ready access to the Federal courts." *Varity Corp. v. Howe*, 516 U.S. 489, 513 (1996) (alterations in original) (quoting 29 U.S.C. § 1001(b)). To further this aim, ERISA requires fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). ERISA participants have "a right to accurate information, and . . . an ERISA plan administrator's withholding of information may give rise to a cause of action for breach of fiduciary duty." *Jones*, 370 F.3d at 1072. ERISA § 502(a)(3) thus authorizes plan participants to bring breach of fiduciary duty claims against plan administrators. *Id.* at 1071.

The district court granted Allstate summary judgment on both the Turner and Klaas retirees' § 502(a)(3) claims, holding that all the claims were time barred under 29 U.S.C. § 1113. Section 1113 provides:

---

[6] Klaas adopts the Turner named plaintiffs' argument regarding the § 502(a)(3) claim and does not raise any separate arguments.

> No action may be commenced under this sub-
> chapter with respect to a fiduciary's breach of any re-
> sponsibility, duty, or obligation under this part, or
> with respect to a violation of this part, after the earlier
> of—
>> (1) six years after (A) the date of the last action
>> which constituted a part of the breach or viola-
>> tion, or (B) in the case of an omission the latest
>> date on which the fiduciary could have cured
>> the breach or violation, or
>> (2) three years after the earliest date on which
>> the plaintiff had actual knowledge of the
>> breach or violation;
> except that in the case of fraud or concealment, such
> action may be commenced not later than six years af-
> ter the date of discovery of such breach or violation.

29 U.S.C. § 1113. Section 1113 is "a statute of repose, and not a mere statute of limitations"; it "bars any suit that is brought after a spec-ified time since the defendant acted, without regard to any later accrual." *Sec'y, U.S. Dep't of Lab. v. Preston*, 873 F.3d 877, 883 (11th Cir. 2017) (emphasis and internal quotation marks omitted). The district court applied the six-year repose period and concluded that any action by Allstate that could give rise to a breach of fiduci-ary duty claim took place outside of the repose period. For the fol-lowing reasons, we agree.

The Turner retirees alleged that Allstate violated its fiduci-ary duty by informing them that their life insurance was "paid up"

or would remain in force for the rest of their lives at "no cost" to them. They argue that having been told the life insurance policies were paid up, they thought the policies were akin to whole life policies that are permanent in the sense that the policies remain in force once they have been paid for in full. They say they were unaware that Allstate was continuing to pay premiums on their behalf and that the insurance could be terminated despite the reservation-of-rights language that was included in the plan documents from 1990 on.

We need not decide whether the retirees were misled about the nature of the life insurance benefits, however, because the record reflects that Allstate last made representations outside of the SPDs about the life insurance benefits in 2006. The Turner named plaintiffs initiated their action seven years later in September 2013. Likewise, Klaas alleged that Allstate breached its fiduciary duty when it told him that his life insurance would remain in force until his death if he accepted the SRO. These representations must have taken place in or before 1995 because the deadline to participate in the SRO was in November of that year. Klaas initiated his action approximately ten years later in March 2015. As neither the Turner named plaintiffs nor Klaas filed their respective suits within six years of Allstate's last representation, their claims are time barred.[7]

_____

[7] The limited exception to the statute of repose for fraud cases in § 1113 does not help the plaintiffs. As Judge Brasher points out in his concurrence, neither the Turner named plaintiffs nor Klaas argued that this exception applies, so

To try to save their breach of fiduciary duty claims, the Turner named plaintiffs and Klaas argue that Allstate continually breached its fiduciary duty to clarify the confusion it had created by making misrepresentations about the retiree life insurance. They assert that this breach continued into 2013, so their claims are not barred.

It is true that a plan administrator can breach its fiduciary duty by failing to correct a misrepresentation. *Jones*, 370 F.3d at 1072. But assuming Allstate's 2006 comments created confusion about its ability to terminate the life insurance benefits, it clarified that confusion by issuing subsequent SPDs that included reservation-of-rights provisions. In January 2007, Allstate issued an SPD directly to retirees that specifically addressed their life insurance benefit, "The Allstate Group Medical Coverage for Former Employees Plan Summary Description: Retiree Life Insurance." This SPD included a "Plan Amendment and Termination" provision, which reserved for Allstate the right to "terminate any of the . . . benefits at any time" and the right to "change the contribution amount required" from plan participants. Doc. 314-7 at 6. And the section directly below this provision contained a no-vesting clause. Any claim for breach of fiduciary duty based on a failure to clarify therefore would hinge on Allstate's actions or inactions before

---

that argument has been abandoned. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

January 2007—more than six years before either group of plaintiffs filed suit.

The Turner named plaintiffs and Klaas also argue that the six-year repose period did not begin to run until Allstate informed them in its 2013 letter that Allstate would no longer pay for the retiree life insurance. We reject this argument because the district court correctly determined that Allstate did not act as a fiduciary when it terminated the retiree life insurance benefits. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) ("When employers [adopt, modify, or terminate welfare plans], they do not act as fiduciaries."). Thus, the date of Allstate's announcement of the termination of benefits cannot give rise to a breach of fiduciary duty claim.

The district court correctly determined that the last action by Allstate that could constitute a breach of fiduciary duty occurred outside of § 1113's statute of repose period. The district court thus did not err by determining that all the § 502(a)(3) claims were time barred and granting summary judgment to Allstate.

## IV.    CONCLUSION

We conclude that (1) Allstate had the authority under the SPDs to terminate the retiree life insurance benefits for both putative classes and did not violate ERISA § 502(a)(1)(B) and (2) any claims for breach of fiduciary duty brought under ERISA § 502(a)(3) were time barred. Accordingly, we affirm the district court's judgment.

**AFFIRMED**

20-14104                [BRASHER, J., Concurring]                1

BRASHER, Circuit Judge, concurring:

I concur without reservation in the Court's disposition of the retirees' breach of contract claims. As to the retirees' breach of fiduciary duty claims, I concur in the result only. The Court reasons that it "need not decide whether the retirees were misled about the nature of the life insurance benefits . . . because the record reflects that Allstate last made representations outside of the SPDs [which reserved the right to modify benefits] about the life insurance benefits in 2006"—more than six years before the retirees filed their fiduciary duty claims. I don't think this reasoning is sufficient to resolve the retirees' claims.

In their pleadings below, the retirees allege that Allstate made two promises that it never intended to fulfill: that the life insurance policies would continue for life and that the life insurance policies were "paid up." In other words, Allstate made a promise about the duration of the benefits ("for life"), and another about the nature of the benefits themselves ("paid up"). Allstate could have satisfied the former promise by paying periodic premiums on a policy for the duration of a retiree's life. But the latter promise required Allstate to buy a particular kind of policy—a fully paid up insurance policy that did not require any additional premium payments going forward.

The retirees' claims sound in fraud and, ordinarily, a fiduciary duty claim alleging fraud is governed by Section 1113's special limitations period for fraud claims. That period—unlike the period

of repose for other fiduciary duty claims—runs from when a claimant *becomes aware* of the fraud. As an exception to the otherwise applicable rule of repose, Section 1113 states that claims involving "fraud or concealment . . . may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113.

On this record, however, I cannot say that the more generous fraud statute of limitations helps the retirees. The Court is entirely correct that Allstate's reservation-of-rights in its SPDs resolves the retirees' claims about the duration of the benefits. Allstate bought policies that required periodic premium payments, which Allstate ultimately decided to stop paying. In the SPDs, Allstate reserved the right to cut off these premium payments going forward. The retirees knew, because of the SPDs, that their going-forward benefits could be changed—contrary to Allstate's statements that the benefits would last for life. But they did not file suit until after the premium payments were cut off, which was more than six years later. Thus, the statute of limitations for fraud bars the claim about the length of the benefit.

But the statute of limitations question as to the latter promise—the nature of the benefit—requires a different analysis. In my view, Allstate's reservation of its right to modify or terminate the ERISA plan has nothing to do with this claim. Allstate's reservation-of-rights allowed it to modify or terminate benefits going forward, and it put the retirees on notice that their periodic benefits could be cut off or cut back. But a reservation-of-rights is not a

20-14104                [BRASHER, J., Concurring]                3

shield to lie about the nature of existing plan benefits. And it would not allow Allstate to claw back a completed benefit that it had already given its retirees—*i.e.*, a fully paid up life insurance policy. Accordingly, this provision of the SPDs did not put the retirees on notice that Allstate had not given them the "paid up" policy that it had promised and had, instead, substituted a policy that required continuing periodic premium payments.

Nonetheless, the retirees do not press this issue on appeal. The district court held that there was no substantial evidence of fraud. And neither the Turner retirees nor Klaas argue in their opening brief that they are entitled to the special limitations period applicable to fraud claims. *See LaCourse v. PAE Worldwide Inc.*, 980 F.3d 1350, 1360 (11th Cir. 2020) (holding that when an appellant fails to "plainly and prominently" raise an argument in his opening brief, that argument is abandoned). Moreover, the record establishes that the Klaas retirees (at least) knew that Allstate had not provided a "paid up" policy when they received their W-2s and saw that Allstate was paying periodic premiums on a life insurance policy. Yet, still, they waited more than six years after that discovery to file suit. So, even if the fraud statute of limitations applied to the Klaas retirees, their claims would be untimely.

If, on summary judgment, the retirees had shown that Allstate fraudulently promised "paid up" insurance and that Allstate concealed its failure to provide that kind of insurance until within six years of their lawsuit being filed, then the retirees' breach of fiduciary duty claim about the nature of the benefits would be

4                    [BRASHER, J., Concurring]                    20-14104

timely. But that is not what the record shows in this case nor was that argument presented on appeal. Accordingly, I concur with the judgment.